UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
v.                             )     No.:  3:07-CR-51
                               )           (VARLAN/SHIRLEY)
LASHONDA HALL,                 )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant Lashonda Hall's ("Hall's") Motion for Judgment of Acquittal or, in the Alternative, For a New Trial (the "first motion for acquittal and new trial") [Doc. 547][1] and Hall's Motion to Vacate Judgment and Grant a New Trial (the "second motion for new trial") [Doc. 610].[2]  The United States has responded in opposition to both motions [Doc. 560; Doc. 611].  The Court has reviewed the pending motions [Doc. 547; Doc. 610], the responsive briefs, and the supporting affidavits [Docs. 560, 563, 610-1, 610-2, 611], all in light of the relevant and controlling law.  For the reasons that follow, the first motion for acquittal and new trial [Doc. 547] will be denied, and the second motion for new trial will also denied [Doc. 610].

---

[1] Hall's first motion for acquittal and new trial was filed by attorney Robert L. Vogel, trial counsel for Hall, on June 27, 2009 [Doc. 547].  Following the filing of that motion, Mr. Vogel moved to withdraw as counsel for Hall [Doc. 591].  The Court permitted the withdrawal on October 26, 2009 [Doc. 602].

[2] Hall's second motion for new trial was filed on February 5, 2010 by attorney James Flanary [Doc. 610].  At the time of this Memorandum Opinion and Order, Mr. Flanary was counsel for Hall.

## I.   BACKGROUND

Hall, along with fourteen co-defendants, was charged with conspiracy to distribute drugs and other related charges in a multiple-count second superseding indictment [*see* Doc. 224]**.**  In June 2009, Hall, along with co-defendant Aaron Brooks ("Brooks"), proceeded to a jury trial before the Honorable Thomas A. Varlan, United States District Judge [*see* Docs. 519-36].  At the close of the parties' proof, Hall and Brooks, each through counsel, made motions for judgments of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure [*see* Doc. 586, pp. 181-92].  The Court denied the motions [*Id.*, pp. 191-92].

On June 19, 2009, the jury returned a verdict, finding Hall guilty on the following counts: count one, conspiracy to distribute and possession with intent to distribute cocaine hydrochloride, crack, marijuana, and ecstacy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), 841(b)(1)(C) and 841(b)(1)(D); count two, aided and abetted by another and in possession of a firearm in furtherance of the drug conspiracy in count one, in violation of 18 U.S.C. §§ 924(c) and 2; count three, aided and abetted by another and in and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2; count four, aided and abetted by another and in possession of a firearm in furtherance of the drug trafficking crime in court three, in violation of 18 U.S.C. §§ 924(c) and 2; and court fifteen, conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i) and 18 U.S.C. § 1956(h) [*see* Docs. 224, 537].  The instant motions followed the jury verdict.

In Hall's first motion for acquittal and new trial, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, Hall requests that the Court grant a judgment of acquittal on grounds that the evidence at trial was insufficient to support Hall's convictions. Alternatively, and pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure, Hall requests a new trial based on insufficient evidence, evidentiary errors, and prosecutorial misconduct. In Hall's second motion for new trial, pursuant to Rule 33(b) of the Federal Rule of Criminal Procedure, Hall requests that the Court order a mistrial, vacate the judgment of the jury, and grant Hall a new trial because the government improperly allowed its witnesses to coordinate their testimony in contravention of Rule 615 of the Federal Rules of Evidence. The government has responded in opposition to each motion. The Court will address each argument in turn.[3]

## II. ANALYSIS

### A. The First Motion for Acquittal and New Trial

#### 1. Standards for Sufficiency of the Evidence Under Rule 29 and Rule 33

A Rule 29(c) motion is a challenge to the sufficiency of the evidence, raised following a jury verdict or discharge. *See* Fed. R. Crim. P. 29(c). When reviewing a insufficiency of the evidence claim, a court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements

---

[3] The Court has not been provided citations to the trial transcript by either Hall or the government. At the time the first motion for acquittal and new trial was filed, the transcript of the trial was not yet available. However, the transcript has now been available since, at the latest, September 2, 2009.

of the crime beyond a reasonable doubt. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In undertaking this analysis, the court can neither independently weigh the evidence, nor judge the credibility of the witnesses who testified at trial. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996), *cert. denied sub nom., Parker v. United States*, 519 U.S. 1134 (1997). After a review of the evidence, a court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not "'remove every reasonable hypothesis except that of guilt.'" *United States v. Jones*, 102 F.3d 804, 807 (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)). In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

Hall has also brought a challenge to the sufficiency of the evidence in this case by moving for a new trial under Federal Rule of Criminal Procedure Rule 33(a). *See Fed. R. Crim. P. 33(a).* A motion for a new trial under Rule 33(a) "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Generally, a motion for a new trial under Rule 33(a) should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593 (citation omitted). In considering a Rule 33(a) challenge to a conviction based on the weight of the

evidence, a court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that . . . [the judge] sits as a thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (internal quotation omitted).

Thus, while Rule 29(c) and Rule 33(a) deal with similar issues, the two rules are governed by different standards of review. On a motion for judgment of acquittal, pursuant to Rule 29(c), a court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. On a motion for new trial pursuant to Rule 33(a), the power of a court is much broader because a court may weigh the evidence and consider the credibility of the witnesses. *See* CHARLES ALAN WRIGHT, NANCY KING & SUSAN KLEIN, FEDERAL PRACTICE AND PROCEDURE § 553 (3d ed. 2004). In light of the broader scope of Rule 33(a), the Court will first address Hall's argument pursuant to that rule.

### a. Drug Charges

Hall argues that the evidence at trial was insufficient to prove that she was involved in a conspiracy to distribute cocaine and crack and that a reasonable jury could not have arrived at such a conclusion. Hall asserts that the jury could not have rationally weighed the testimony of Tavares Smith ("Smith"), Michael Briddy ("Briddy"), and Mashato Lamar ("Lamar") because, if it had, the jury would have recognized that Smith's testimony could not have co-existed with the testimonies of Briddy and Lamar because the witnesses testified to contradictory facts. Specifically, Hall argues that Smith testified that Hall was at Lamar's

house during several drug deals and Lamar and Briddy testified that she was not. Thus, Hall asserts, a reasonable jury could not have relied on Smith's testimony and could not have found the elements of the drug conspiracy charge proved beyond a reasonable doubt. Hall also argues that the evidence at trial was insufficient to prove the marijuana charge against her because no evidence was produced to indicate the length of time the marijuana was in the house where Hall lived, or that she had knowledge it was there.

To prove a charge of drug conspiracy under 21 U.S.C. § 846, the government must prove, beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). No formal agreement is necessary to prove a charge of conspiracy; rather, "'a tacit or material understanding among the parties'" is sufficient. *Id.* (quoting *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997) (citation omitted)). Further, the existence of a conspiracy may be shown by direct evidence or inferred from circumstantial evidence. *Avery*, 128 F.3d 971.

To prove Hall aided and abetted the possession of marijuana with an intent to distribute it under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and 18 U.S.C. § 2, the government must prove, beyond a reasonable doubt: (1) knowing and intentional possession of marijuana; (2) knowledge that the substance was marijuana; and (3) intent to distribute the marijuana. *United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir. 1993). The statute for aider and abetter liability provides that "[w]hoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or

procures its commission, is punishable as a principle [in the offense]." 18 U.S.C. § 2(a). Thus, in order to convict Hall as an aider and abettor of the marijuana charges pursuant to 18 U.S.C. § 2, the government must prove, beyond a reasonable doubt: (1) that the crime charged was committed; (2) that Hall in some way aided or abetted someone else to commit the crime; and (3) that Hall intended to commit the crime. *See Phibbs*, 999 F.2d at 1063.

The government's evidence regarding these charges consisted of the testimony of law enforcement agents, cooperating witnesses, recorded phone conversations, and notebooks with drug ledgers containing notations in Hall's handwriting. Counsel for Hall acknowledged, in his opening and closing arguments, that Johnnie Martin ("Martin"), was the leader of a drug-trafficking organization and operated drug houses throughout Knoxville. Evidence at trial showed that Hall lived in one of these houses with Martin. Evidence was also put forth that in May 2007, law enforcement agents executed a search warrant on a house occupied by Hall and Martin, seized large amounts of marijuana, approximately $60,000 in cash, and a loaded assault rifle found next to Martin and Hall's bed. An agent also testified at trial that several pounds of marijuana seized from this house was packaged for distribution purposes.

Testimony was introduced that, at another drug house operated by Martin, agents seized cocaine, ecstasy, firearms, cell phones, and drug paraphernalia, including scales. Hall and other members of the drug organization were found in the kitchen of this house at the time of the search. An agent testified at trial that the seized cocaine appeared to be packaged for distribution and evidence showed that one of the seized cell phones was subscribed to by

Hall. The contact lists on this cell phone were shown to the jury and included aliases used by members of Martin's drug trafficking organization.

Tavares Smith ("Smith") testified that he met Hall when she drove Martin to Atlanta to pick up drugs. Smith testified that Hall was present on several occasions when Martin purchased marijuana from Mashato Lamar ("Lamar"). Smith also testified that Hall drove him around, on several occasions, when he came to Knoxville to deliver drugs. Testimony also indicated that Hall was present when Smith delivered payment to Martin for drugs and Hall sometimes took money for drugs when Martin was not at home. Smith testified that Hall deposited this money in a bank and also kept some in a safe deposit box at a friend's house.

Michael Briddy ("Briddy"), testified that Hall was with Smith when he traveled to Atlanta to pick up cocaine. Briddy also testified that Hall accompanied Martin to Atlanta on at least two occasions when Martin came to purchase drugs. Lamar testified that Hall sometimes drove other members of the drug organization to pick up marijuana from Lamar, that Hall sometimes paid Lamar for the marijuana, and, on one occasion, Hall came to Atlanta by herself and Lamar gave her several pounds of marijuana to take back to Knoxville for Martin. Another witness, Tony Manning ("Manning") testified that he gave partial payment to Hall for drugs on several occasions.

In addition to this testimony, the government presented recorded phone conversations between Hall and Smith and Hall and Martin. The substance of these phone conversations was Martin's drug organization and indicated that Hall talked with members of the drug

organization and asked them for money on several occasions. These conversations also indicated that Hall took money from these individuals and put it in a bank and a safety deposit box. One phone conversation indicated that Hall told Smith she knew people trying to get in touch with him and Smith told Hall to make a list of each person's name and what they wanted and Smith would pay Hall $100 for each of the names. The government also produced several notebooks containing drug ledgers kept by Hall and Smith. Testimony and evidence at trial indicated that Hall had handwritten drug-related terms next to notations of money amounts.

Upon the Court's review of this testimony and the other evidence, there is no question that the government put forward sufficient evidence to establish the elements of the drug charges against Hall. The government produced evidence and testimony that Hall made phone calls regarding drug deals and engaged in conversations related to the drug organization. There was ample evidence presented at trial that drugs, both cocaine and marijuana, were seized from various drug houses that Hall either lived in or was found to be associated with. There was also evidence that Hall facilitated the sale of drugs in furtherance of the drug organization by keeping a list of persons who wanted to purchase drugs from Smith. In addition, at trial, the handwritten notations in the drug ledgers was compared with a sample of handwriting known to be Hall's, and the jury could have reasonably concluded that the notations were consistent with Hall's handwriting. Further, the testimony of the witnesses, while not all consistent, was sufficient for a rational jury to conclude that Hall picked up money, brokered or helped broker various drug transactions, delivered drugs, both

cocaine and marijuana, and drove members engaged in the conspiracy back and forth from Atlanta. Based on this evidence, the Court cannot conclude that the interests of justice require a new trial and the jury's verdict was against the manifest weight of the evidence, pursuant to Rule 33(a). This is not a case in which extraordinary circumstances and the evidence preponderates heavily against the verdict. *See Hughes*, 505 F.3d at 593. Accordingly, Hall's argument that the drug charges were against the weight of the evidence is hereby denied.

### b. Firearm Charges

Hall also argues that the evidence was insufficient to convict Hall of the firearms charges because Smith's testimony was "a lie," Manning testified "incorrectly," and the government did not prove Hall knew that firearms were in the drug houses for purposes of the drug conspiracy. In order to prove that Hall knowingly possessed firearms in furtherance of the drug charges, violations of 18 U.S.C. § 924(c), the government must prove that a firearm was possessed in furtherance of a drug transaction. *United States v. Mackey*, 265 F.3d 457, 461-62 (6th Cir. 2001) (noting that the government must prove that "a firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense"). "In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d

at 462.[4]  Thus, the elements the government must prove are: (1) commission of the underlying drug trafficking offenses; (2) knowing possession of a firearm; and (3) possession of a firearm in furtherance of the specified drug trafficking offenses. *See* 18 U.S.C. § 924(c)(1); *see, e.g., United States v. Stewart*, 69 F. App'x 213, 217 (6th Cir. 2003).

As stated above, there was sufficient evidence by which the jury could have found Hall guilty of the drug charges.  In regard to the other requirements for proving the firearm offenses, the jury was presented with evidence that a loaded assault rifle was recovered from a house (more specifically, next to a bed) that Martin and Hall shared, and a house in which marijuana was also discovered.  Smith testified that Martin made sure all members of the drug organization had firearms.  Briddy testified that Martin kept firearms in all his drug houses, including the house he shared with Hall, and Briddy also stated that he had seen firearms in at least two of the drug houses operated by Martin.  Finally, Manning testified that the members of the drug organization kept firearms at all of the drug houses to deter robbers.

While Hall argues that Smith's testimony was "a lie" and that Manning's testimony was "wrong," Hall provides no specific evidence for these assertions.  In sum, the assault rifle found next to the bed, the testimony that most members of the drug organization possessed firearms, the testimony that firearms were located in the drug houses for the

---

[4] "Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of a crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of activity conducted, and the time and circumstances under which the firearm was found."  *Mackey*, 265 F.3d at 462 (citation omitted).

purpose of protecting the drugs, cash, and the individuals engaged in the drug transactions, all cumulatively support the jury's finding that Hall possessed firearms such as the loaded assault rifle and the firearms located in the drug houses. Further, the evidence was sufficient for the jury to have found that such possession was, at least jointly with Martin, in furtherance of the drug charges. Accordingly, Hall's argument in this regard is also denied.

### c.      Money Laundering Conspiracy Charge

In regard to whether the evidence at trial was sufficient to support a conviction for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the government is required to prove, beyond a reasonable doubt, that Hall conspired to violate 18 U.S.C. § 1956.[5] Establishing the existence of a conspiracy under 18 U.S.C. § 1956(h) requires the same elements as the establishment of a conspiracy pursuant to 21 U.S.C. § 846, as outlined above. *See United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006) (stating that the government only need prove that the defendant "agreed with another person to violate the substantive provisions of the money-laundering statute during the period alleged in the indictment"); *Whitfield v. United States*, 543 U.S. 209, 214 (2005) (stating that the government need not prove that the defendant committed any overt act in furtherance of a money laundering conspiracy).

---

[5] Under 18 U.S.C. § 1956(h), the government must prove the existence of a non-overt act conspiracy, that the defendant knew of the conspiracy, and that, with knowledge, the defendant became a part of that conspiracy, the object of which violated the money laundering statutes. 21 U.S.C. § 846; *see United States v. Arnold*, 117 F.3d 1308 (11th Cir. 1997) (giving the elements of a non-overt act conspiracy).

The money laundering conspiracy charge in this case alleges a conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i).  To prove this charge, the government must prove the following elements beyond a reasonable doubt: 1) that Hall conducted or attempted to conduct a financial transaction which involved the proceeds of an unlawful activity; (2) that Hall knew the transaction involved proceeds of some form of unlawful activity; (3) and that Hall intended to promote the carrying on of that unlawful activity.  *See* 18 U.S.C. § 1956(a)(1)(A)(i); *United States v. Prince*, 627 F. Supp. 2d 863, 865 (W.D. Tenn. 2008).  The "knowledge" requirements of the money laundering statute can be proven by either direct or circumstantial evidence.  *United States v. Johnson*, 26 F. App'x 441, 446 (6th Cir. 2001) (citation omitted).

As stated above, based on the evidence presented at trial, the jury could reasonably have determined that Hall deposited money for Martin and was aware this money came from the illegal sale of drugs.  The jury heard recorded phone conversations in which Hall discussed money and the jury was also able to consider the notations in Hall's handwriting in the drug ledgers.  Evidence presented at trial also indicated that Hall used this money to purchase airline tickets and rent vehicles in furtherance of the drug charges.  Accordingly, the jury could have found, from both direct and circumstantial evidence, that Hall used money obtained as a result of the drug transactions with the intent to further the drug conspiracy.  Thus, Hall's argument in this regard is also denied.

### d.    Sufficiency of the Evidence

In sum, the jury considered evidence such as recorded phone conversations, firearms, and drug ledgers, and heard testimony from law enforcement agents and cooperating witnesses. Hall, through counsel, had the opportunity at trial to challenge the credibility of the witnesses and to thoroughly cross-examine them regarding their inconsistent statements. Hall also had the opportunity to put forth, by witness or otherwise, legitimate justifications for her actions. The province of the jury is to weigh the evidence and determine which explanation of the circumstances, the events, and the facts is the most credible. It is also the jury's job to consider each parties' explanation of the evidence established at trial and to make a decision based on that evidence.

In light of the evidence and testimony presented in this case, the Court finds that the evidence presented at trial was sufficient to support the convictions. After considering the evidence and testimony, a rational trier of fact could have determined that Hall was involved in the drug conspiracy and the underlying drug transactions, that Hall possessed firearms in furtherance of the offenses, and that Hall used the money obtained from the drug transactions in furtherance of the drug conspiracy. Thus, the Court finds neither a miscarriage of justice nor that the weight of the evidence was against the verdict. Accordingly, Hall has not sustained her burden under Rule 33(a). Given this determination, the Court need not

determine whether Hall has established the less stringent burden required for her renewed Rule 29 motion[6] and thus, both requests are hereby denied.

## 2. Rule 33(a)

Federal Rule of Criminal Procedure 33(a) permits a court, upon motion by a defendant, to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Hall asserts that she was denied a fair trial because: (a) she was denied the right to testify in her own defense; (b) video evidence presented by the government had no probative value and was highly prejudicial and misleading; (c) the government's in-court identifications of Hall and of specific items she was wearing was without foundation, unreliable, highly prejudicial, and misleading; (d) the government knowingly presented perjured testimony that it knew to be false and contradictory of other testimony; and (e) the government engaged in prosecutorial misconduct, including prosecutorial vindictiveness.

### a. Right to Testify

Hall argues that she was constructively denied the opportunity to testify in her own defense because the Court granted the government permission to use an "unreliable, illegally obtained statement" to impeach Hall if she decided to testify at trial and it was error for the Court to deny Hall's motions to suppress [Doc. 132; Doc. 503] and motion in limine [Doc. 513], pertaining to Hall's requested exclusion of this statement. Prior to trial, Hall argued

---

[6] Hall made her first Rule 29 motion following the close of proof at trial. The Court denied the motion.

that her statement, made following her arrest and execution of a rights waiver, was the product of police coercion and if the government was permitted to use it to impeach Hall at trial, it would have a "chilling effect on her testimony." [Doc. 506, p. 2; Doc. 513]. Hall originally withdrew her first motion to suppress regarding this statement and her renewed motion to suppress was denied by Magistrate Judge Shirley as untimely [Doc. 506]. The issue was taken up again in connection with Hall's pretrial motion in limine, and the Court took the motion under advisement [Doc. 580, pp. 77-79]. Hall did not testify at trial, therefore the government never attempted to use the statement for impeachment purposes. Now, in the first motion for acquittal and new trial, Hall argues that the possible use of the statement by the government "was the motivating factor in [Hall's] decision not to testify on her own behalf." [Doc. 547, p. 9].

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). However, this "privilege cannot be construed to include the right to commit perjury" and "cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances[.]" *Harris*, 401 at 225. Evidence that may be inadmissible against a defendant in the government's case in chief may be introduced during cross-examination in order to attack a defendant's credibility, "provided of course that the trustworthiness of the evidence satisfies legal standards." *Id.* at 224.

Thus, if Hall had decided to testify, a privilege she was clearly able to exercise, and had she testified inconsistently with her prior statement, the government could have

16

presented her with her prior statement in an attempt to impeach her credibility, provided the statement satisfied the legal standards of trustworthiness. *See Harris*, 401 U.S. at 224-26; *see also Oregon v. Haas*, 420 U.S. 714, 722 (1975) (extending the use of unlawfully obtained statements for the limited purpose of impeaching a defendant's credibility). While Hall's knowledge that the government might have used her statement could indeed have constituted a "motivating factor" in Hall's decision not to testify, this does not warrant a finding that she was denied her due process right to a fair trial. While the right to testify in one's own defense is an important and protected right—it is not a right free from repercussions—among these, that the defendant may be faced with the prospect of questioning about his or her prior inconsistent statements, as was the situation in this case. Thus, Hall was not denied a fair trial in this regard.

### b. Video Evidence

Hall also argues that it was "prejudicial and misleading" to allow the jury to view video evidence of the car chase. At trial, the government asserted that the car chase was a part of the overall drug conspiracy and the evidence seized from the car showed that the conspiracy was continuing at the time of the chase. The government discussed the car chase during their opening statements, elicited testimony from witnesses about the date of the chase, discussed the significance of the car chase as the closing of the conspiracy, and asserted that the evidence seized—drugs—was part of the drug trafficking transactions that formed the basis for the charges against Hall.

Federal Rule of Evidence 403 provides that

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Hall offers no case law in support of her argument as to why the probative value of the car chase videos was substantially outweighed by its "prejudicial" effect, apart from alleging damage due to prejudicial effect. Without more, the Court cannot conclude that this alleged damage outweighed the probative value of the videos. Hall has also offered no argument as to why the videos were "misleading." Accordingly, Hall's argument in this regard is also denied.

### c.     In-Court Identifications

Hall's next argument is that the government's in-court identifications of Hall and the specific items she was wearing were without foundation, unreliable, highly prejudicial, and misleading. The Court does not agree. Each of the witnesses who gave an in-court identification had personal knowledge of Hall and the identifications were made by the witness pointing directly at Hall or identifying a piece of clothing she was wearing. Hall has also not provided any legal authority for this argument and does not mention any particular witness identification that was unreliable, prejudicial, or misleading. Further, Hall has not pointed to any place in the record at which the government failed to lay a proper foundation, only making the conclusory statement that the government failed to do so. Accordingly, Hall's argument in this regard is also denied.

18

#### d. Presentation of Perjured and False Testimony

Hall's next argument is that the government knowingly put on perjured testimony. In order to succeed on this argument, Hall must show that: (1) the statements were actually false; (2) the statements were material; and (3) the prosecution knew them to be false. *See United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009); *United States v. Benton*, 64 F. App'x 914, 920-21 (6th Cir. 2003).

The evidence discussed by Hall, how Smith's testimony could not be true if the testimonies of Briddy and Lamar were true, and vis versa, does not meet the requirements for proving that the government knowingly proffered false testimony. While the Court assumes that the testimonies of these witnesses was material, "[m]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994) (quotation marks and citation omitted). While Hall asserts that "it cannot be seriously asserted by the government that they did not know [these statements] were false[,]" Hall has not provided evidence indicating the government knew that the statements were false, only asserting that the statements were inconsistent. Witnesses often testify to inconsistent facts and events and sometimes testimony by witnesses is clearly contradictory. However, it is the province of the jury to determine which witnesses and which set of facts are the most credible. Thus, Hall's argument in this regard is also denied.

### e.     Prosecutorial Misconduct and Prosecutorial Vindictiveness

Hall has also asserted prosecutorial misconduct and prosecutorial vindictiveness. Hall raised this issue in pretrial motions and by motion during her case in chief, all of which were denied by the Court. Here, Hall asserts prosecutorial misconduct in connection with counsel for the government's closing arguments, specifically, that counsel for the government "mocked and treated derisively the arguments made by the defense [and] clearly expressed his opinion about these arguments." [Doc. 547, p. 12]. Hall also asserts that counsel for the government "cloaked the [government's] investigation in the authority of the Court, bolstering the government's position by implying that the Court somehow approved of the investigation and, thus, the results are more reliable." [*Id.*].

The Court will not revisit its previous denials of Hall's motions regarding prosecutorial misconduct, as Hall has not articulated any new arguments or evidence relating to those motions. As to Hall's allegation of prosecutorial misconduct or vindictiveness during closing arguments, Hall has not pointed to any specific statements made by counsel for the government. Without the ability to consider a specific statement or statements made by counsel for the government, the Court cannot sustain Hall's allegation of misconduct or vindictiveness, nor can the Court find that the government implied that it had "cloaked the investigation in the authority of the Court." [Doc. 547, p. 12]. *See, e.g., United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000) (stating that "[w]hen reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper. If they appear improper, we then look to see if they are flagrant and warrant reversal."); *United*

*States v. Stover*, 474 F.3d 904, 915-16 (6th Cir. 2007) (noting, in the context of closing arguments, the standards for determining whether a prosecutor's comments are "flagrant"). Accordingly, Hall's argument in this regard is also denied.

### B.    The Second Motion for New Trial

In the second motion for a new trial [Doc. 610], pursuant to Federal Rule of Criminal Procedure 33(b)(1), Hall requests that the Court order a mistrial, vacate the judgment of the jury, and grant a new trial on grounds of newly discovered evidence.  Specifically, that the government improperly allowed its witnesses to coordinate their trial testimony in contravention of Rule 615 of the Federal Rules of Evidence ("Rule 615"), the rule pertaining to the sequestration of witnesses.[7]  *See* Fed. R. Evid. 615.  Hall asserts that in the companion case to this case, *United States of America v. Johnnie E. Martin*, 3:07-CR-51 (the "*Martin* trial"), Rule 615 was ordered and in effect for the duration of the trial.  Hall asserts that Rule 615 was violated in the *Martin* trial when the government allowed its witnesses who had previously testified to be held in the same holding cell area as other witnesses who were waiting to testify [Doc. 610, ¶ 2].  At the *Martin* trial, Hall asserts that Lamar, Manning, Briddy, and Michael Orr ("Orr"), "discussed their trial testimony, in specific detail, with all other witnesses" [*Id.*, ¶¶ 4-6] and "coordinated what needed to be said . . . at the *Martin* trial." [*Id.*, ¶ 8].  Specifically, Hall asserts that Briddy, Manning, and Lamar testified to the

---

[7] In support of her second motion for a new trial, Hall has submitted two affidavits [Doc. 610-1; Doc. 610-2].  These affidavits are the exact same affidavits as were filed with Johnnie E. Martin's motion for a new trial in the *Martin* case, 3:07-CR-51.  Hall has not specifically addressed the substance of these affidavits in her motion, nor does she address any specific testimony allegedly discussed by the witnesses and how such applies to her case.

same factual issues at the *Martin* trial as they testified to at her trial [*Id.*, ¶ 9] and that, had their "tainted testimony been known" to trial counsel for Hall, he could have requested that such testimony be barred or he could have conducted cross-examination of the witnesses and requested a specific jury instruction concerning witness veracity [*Id.*].

### 1.    Federal Rule of Criminal Procedure 33(b)

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  Whether to grant a Rule 33 motion is left to the sound discretion of the district court, *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008), and the defendant bears the burden of proving that a new trial should be granted.  *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994).  Hall bases her second motion for new trial on grounds of newly discovered evidence , pursuant to Rule 33(b)[Doc. 521, ¶ 11].  *See* Fed. R. Crim. P. 33(b).  To obtain a new trial on this basis, a defendant must show that: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.  *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986); *see United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982), *cert. denied*, 461 U.S. 945 (1983).

### 2.    The Newly Discovered Evidence

The newly discovered evidence in this case consists of information that witnesses who testified for the government at the *Martin* trial discussed and coordinated the same testimony

that they later presented in Hall's trial. In support, Hall has submitted an affidavit by Janardo Howell (the "Howell Affidavit"), an individual who states he was in the holding cell with several government witnesses during the *Martin* trial awaiting an appearance in an adjacent courtroom on another matter [Doc. 610-1], and an affidavit by Jason Nelson (the "Nelson Affidavit"), a government witness at the *Martin* trial [Doc. 610-2].

In the Howell Affidavit, Howell states that he was housed in a cell with Briddy [Doc. 610-1, ¶¶ 1-2], and that, during the *Martin* trial, Manning, Lamar, and Briddy "were discussing, in specific detail, their potential testimonies" [*Id.*, ¶¶ 3-4]. Howell asserts that he spoke directly with Manning about his testimony, and that he also spoke directly with Briddy about his involvement in the cocaine conspiracy that was a key part of the charges in the *Martin* trial [*Id.* ¶¶ 5, 7]. Howell asserts that Briddy informed him that his testimony would "absolve Mr. Lamar of any involvement in the alleged conspiracy" [*Id.*, ¶ 5]. Howell also asserts that "[i]t was apparent that these people was [sic] trying to work together as far as their testimonies at the trial." [*Id.*, ¶ 8].

In the Nelson Affidavit, Nelson states that, while waiting to testify in the *Martin* trial, he was held in a holding cell with Lamar, Tyson Bivens ("Bivens"), Amahd Booker ("Booker"), and Manning [Doc. 610-2, ¶ 2]. Nelson asserts that during the course of the trial he "exchanged information [with these individuals] about previous and upcoming testimony." [*Id.*, ¶ 3]. Nelson asserts that he heard Briddy discuss his testimony after he testified and that Booker "specifically discussed his potential testimony with me [Nelson], and asked if I agreed so that our admissions would be the same." [*Id.,* ¶¶ 5-6]. Nelson also

asserts that these individuals discussed potential reductions in their sentences for their cooperation with the government and that it was his [Nelson's] opinion that "the government allowed us to be placed in a cell together so that we could all give consistent testimony with each other." [*Id.*, ¶ 7].

### 3. Analysis Under Federal Rule of Criminal Procedure 33(b)

Taking the information in the affidavits as true, Hall cannot meet the stringent standard required by a Rule 33(b) motion. Fed. R. Crim. P. 33(b); *O'Dell*, 805 F.2d at 640 (stating that under Rule 33, a defendant must show that the newly discovered evidence "would likely produce an acquittal"); *United States v. Frost*, 125 F.3d 346, 382 (6th Cir. 1997) (stating that the Rule 33 standard is more stringent then the standard required by *Brady*).

As stated above, in order to prevail on a Rule 33(b) motion based on newly discovered evidence, a defendant must show four elements. Hall has satisfied the first element, (1) that evidence of discussions between government witnesses was discovered after trial. As to the second element, Hall has not stated that this evidence could not have been discovered with due diligence nor has Hall given a reason why it was not. However, given the nature of the evidence, Court will assume it could not have been discovered with reasonable due diligence. Accordingly, Hall has also satisfied the second element required for a Rule 33(b) motion.

The third element of a Rule 33(b) motion requires that the newly discovered evidence be material and not merely cumulative or impeaching. *See O'Dell*, 805 F.2d at 640. However, Hall has neither shown nor alleged that the portions of the testimony discussed in

the holding cell reaches the level of materiality required for a Rule 33(b) motion. As such, the Court cannot discern whether such evidence was material and not merely cumulative or impeaching.

Further, Hall does not discuss or cite either affidavit in her motion. Rather, she argues that because Briddy, Manning, and Lamar testified to the same factual issues at her trial as at the *Martin* trial, by implication, their testimony was tainted at her trial due to the alleged Rule 615 violation at the *Martin* trial. This assertion, without more, is not enough for the Court to make a materiality determination as to the evidence and testimony which Hall alleges was "tainted." Neither the Howell Affidavit nor the Nelson Affidavit discuss or cite specific statements or details discussed by the witnesses [*see* Docs. 610-1, 610-2]. For instance, Nelson only asserts that the witnesses discussed testimony, "engaged in conversation" and "exchanged information about previous and upcoming testimony" and that he heard Lamar "exchange dialogue" with another witness and that Briddy talked about his testimony "after he testified." [Doc. 610-2. ¶¶ 1-2, 4]. These vague references to "testimony," without the substance or even the subject of what the witnesses discussed, cannot support a finding that this evidence was material. Finally, Howell's assertion that "people were trying to work together" to corroborate their testimonies is a conclusory statement and does not constitute material newly discovered evidence that would warrant a new trial [Doc. 610-1, ¶ 8]. For instance, Nelson asserted that Booker specifically discussed his testimony with him and the two agreed that their admissions would be the same—but

Nelson did not mention any specific testimony, detail, subject, or specific admission [*Id.*, ¶ 6]. The Court cannot attach a great deal of weight to such a vague assertion.

In addition, Nelson's assertion that the subject of cooperation and resulting reductions in sentence recommendations was discussed in the holding cells is not "newly discovered evidence" that constitutes material evidence for the purpose of a new trial [*Id.*, ¶ 7]. It is common knowledge, especially among witnesses awaiting sentencing who have engaged in plea agreement negotiations with the government and who have agreed to be witnesses in trials, that cooperation credit may be available. Finally, Nelson's statement that it was his "opinion" that the government allowed these witnesses to be kept in a holding cell together, enabling them to coordinate their testimony, is affirmatively denied by the government and not supported by other evidence [*see* Doc. 606, p. 2].

The only statement in both affidavits that directly pertains to Hall's trial is Nelson's assertion that Manning, Orr, Briddy, and Lamar discussed "the possibility of testifying" in Hall's trial and "discussed their possible and potential testimony" [Doc. 620-2, ¶ 5]. As to this discussion of a "possibility" of testifying in the Hall trial, this does not constitute a coordination of testimony. As to the discussion of "possible or potential testimony," this alone is not enough for the Court to determine whether what these witnesses discussed was material, not merely cumulative or impeaching. Further, counsel for Hall argues that, had he known of these alleged discussions, trial counsel would have been able to cross-examine these witnesses on these matters. However, trial counsel for Hall, Mr. Vogel, had the opportunity and did cross-examine these witnesses regarding their testimony, their

knowledge of Hall's involvement in the charges against her, and their own involvement in the drug conspiracy that was the subject of the second superseding indictment.

The fourth element of a Rule 33(b) motion requires that the newly discovered evidence would be likely to produce an acquittal. *See O'Dell*, 805 F.2d at 640. However, Hall has not provided the Court with any evidence or argument that the testimony discussed by these witnesses would have been likely to produce an acquittal instead of a conviction. Because Hall has pointed to no specific testimony or evidence, the Court must consider the whole of the evidence and testimony presented at Hall's trial. The government's evidence against Hall included recorded phone conversations which presented the jury with evidence that Hall discussed her conduct in the drug conspiracy, including depositing money and picking up drugs. The jury also was able to consider drug ledgers containing drug-related notations in Hall's handwriting. The jury was also presented with evidence obtained from executed search warrants on various drug houses—large amounts of cash, firearms, and illegal drugs, including cocaine and marijuana. This evidence fully corroborated the government's proof and the jury's verdict, and there is no question that the government put forward sufficient evidence to establish the elements of the charges against Hall. The testimony of the witnesses whom Hall now claims discussed and coordinated their testimony during the *Martin* trial was also corroborative of this other evidence implicating Hall in the charges against her. As such, Hall has not shown that this newly discovered evidence would likely produce an acquittal.

### 4.    Federal Rule of Evidence 615

Hall also argues that these alleged communications constitute a violation of Rule 615. *See* Fed. R. Evid. 615. Rule 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear testimony of other witnesses. *Id*. The Sixth Circuit has stated that this rule is for the purpose of preventing "the influencing of a witness' testimony by another witness." *United States v. Rugiero*, 20 F.3d 1387, 1392 (6th Cir. 1994) (citing *United States v. Gibson*, 675 F.2d 825, 835 (6th Cir. 1982), *cert. denied*, 459 U.S. 972 (1982)).

It is unsettled in the Sixth Circuit whether Rule 615 extends beyond the courtroom. *United States v. Solario*, 337 F.3d 580, 592-93 (6th Cir. 2003) (citing *Rugiero*, 20 F.3d at 1382). Assuming it does, however, it is well settled in the Sixth Circuit that a "'violation of an order directing that witnesses be sequestered does not automatically bar a witness' testimony.'" *Rugiero*, 20 F.3d at 1394 (quoting *Gibson*, 675 F.2d at 835-36). Rather, exclusion of testimony is only permitted in "particular circumstances," such as, "where a witness has remained in court with the 'consent, connivance, procurement, or knowledge' of the party seeking his testimony." *Solario*, 337 F.3d at 593 (quoting *Gibson*, 675 F.2d at 836). In this case, Hall alleges that the government knew or meant for its witnesses to be held together during trial. However, beyond this allegation, and a statement by Nelson that it was his "opinion" that it was the government's intent to house the witnesses together, Hall has not presented evidence that the government intended to, procured, or was aware of any discussions between witnesses regarding their testimony during the *Martin* trial. Without

28

more, the Court cannot conclude that the government consented to, procured, or was aware of these communications.

As to Hall's argument that the alleged violation of Rule 615 constitutes a sufficient reason for the Court to order a new trial, the Court finds that Sixth Circuit precedent is against this argument. The Sixth Circuit clearly recognizes that the purposes of Rule 615 should be enforced—the prevention of witness influencing, coaching, and false testimony. *See Gibson*, 675 F.2d at 825. However, the Sixth Circuit also notes that while violations of the sequestration rule should be avoided, for a new trial to be granted, a violation of Rule 615 must also prejudice the defendant and prevent him from receiving a fair trial. *Id.*; *see also Rugiero*, 20 F.3d at 1394. Hall has not presented sufficient evidence of prejudice or evidence that she did not receive a fair trial. Neither affidavit indicates what testimony was discussed in the holding cells and there was also a substantial amount of other evidence produced at trial by which a jury could have found against Hall. Because a violation of Rule 615 does not automatically bar the testimony of a witness, and because Hall has pointed to no specific evidence or testimony which the Court could find constitutes material evidence or evidence likely to produce an acquittal, the alleged violation of Rule 615 did not prevent Hall from receiving a fair trial and thus, a new trial is not warranted.

## III.    CONCLUSION

In sum, finding that none of Hall's arguments warrants a new trial, Hall's first motion for judgment of acquittal and new trial [Doc. 547] pursuant to Rule 29(c) and Rule 33(a) of the Federal Rules of Criminal Procedure is hereby **DENIED** and Hall's second motion for new trial [Doc. 610] pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure is also hereby **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE