UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CR-51 |
| | ) | (VARLAN/SHIRLEY) |
| LASHONDA HALL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant Lashonda Hall's ("Hall's") Motion for a New Trial Based on Grounds of Newly Discovered Evidence (the "third motion for new trial") [Doc. 649].[1] The United States has responded in opposition [Doc. 676]. The Court has reviewed the pending motion, the responsive brief, and the related filings, all in light of the relevant and controlling law. For the reasons that follow, Hall's third motion for new trial [Doc. 649] will be denied.

**I.    Background**

Hall, along with multiple co-defendants, was charged with conspiracy to distribute drugs and other related charges in a multiple-count second superseding indictment [*see* Doc.

---

[1]Hall's first motion for acquittal and new trial was filed on June 27, 2009 by her trial counsel, attorney Robert L. Vogel [Doc. 547]. Following the filing of that motion, Mr. Vogel moved to withdraw as counsel [Doc. 591]. The Court permitted the withdrawal on October 26, 2009 [Doc. 602]. Hall's second motion for new trial was filed on February 5, 2010 by attorney James Flanary [Doc. 610]. The Court denied these motions on April 6, 2010 [Doc. 616]. Following that order, Mr. Flanary moved to withdraw as counsel [Doc. 632]. The Court permitted the withdrawal on January 26, 2011 [Doc. 636]. Hall's third motion for new trial was filed by her present attorney, Mr. Mark Brown.

224]. In June 2009, Hall and co-defendant Aaron Brooks ("Brooks") proceeded to a jury trial before the undersigned [*see* Docs. 519-36]. At the close of proof, Hall and Brooks, each through counsel, made motions for judgments of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure [Doc. 586, pp. 181-92]. The Court denied the motions [*Id.*, pp. 191-92].

On June 19, 2009, the jury returned a verdict, finding Hall guilty on the following counts: count one, conspiracy to distribute and possession with intent to distribute cocaine hydrochloride, crack, marijuana, and ecstacy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), 841(b)(1)(C) and 841(b)(1)(D); count two, aided and abetted by another and in possession of a firearm in furtherance of the drug conspiracy in count one, in violation of 18 U.S.C. §§ 924(c) and 2; count three, aided and abetted by another and in and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2; count four, aided and abetted by another and in possession of a firearm in furtherance of the drug trafficking crime in court three, in violation of 18 U.S.C. §§ 924(c) and 2; and court fifteen, conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i) and 18 U.S.C. § 1956(h) [*see* Docs. 224, 537]. Following her conviction, Hall filed two motions for a new trial or acquittal [Docs. 547, 610]. In those motions, Hall sought a new trial or acquittal on grounds that the evidence at trial was insufficient to support her conviction, evidentiary errors at trial, prosecutorial misconduct, newly discovered evidence, and a violation of Rule 615 of the Federal Rules of Evidence. The Court denied the motions on April 6, 2010 [Doc. 616].

In the instant motion, Hall requests a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure on grounds of newly discovered evidence, specifically, the conduct and testimony of Mashato Lamar ("Lamar"). In support of her motion, Hall has submitted an affidavit by Johnnie Martin ("Martin" and the "Martin Affidavit"), a co-defendant who went to trial separately from Hall and Brooks and was convicted of various charges, and a portion of a trial transcript from the trial of Christopher Kelso (the "Kelso transcript") [Doc. 649].

The Kelso transcript contains testimony describing a letter, sent by Lamar to Assistant U.S. Attorney Tracee Plowell ("AUSA Plowell") following the first trial of Johnnie Martin (the "first *Martin* trial"), during which Lamar testified as a government witness. In the letter, Lamar apologizes to AUSA Plowell due to his concern about his testimony at the first *Martin* trial. The Martin Affidavit describes a conversation Martin had with Lamar prior to the trial of Hall and Brooks, at which Lamar also testified as a government witness. Lamar's testimony was examined by both the government and the defense. Hall argues in her motion that this testimony tainted her ability to get a fair trial due to Lamar's fraudulent representations and the tactics he employed to obtain information from the first *Martin* trial. Hall asserts that the Martin Affidavit shows that Lamar represented to Martin that he would not be testifying at Hall's trial and, based on that representation, Martin allowed Lamar to review the transcripts from the first *Martin* trial which contained incriminating statements about Hall [Doc. 649, pp. 8-9]. Hall asserts that Lamar then tailored his testimony at the trial of Hall and Brooks to help ensure Hall's conviction.

3

Hall also asserts that the government never provided her a copy of the letter from Lamar and that the government's failure to do so constitutes a violation of the principles outlined in *Brady v. Maryland*, 373 U.S. 83 (1963). Last, Hall asserts that Lamar shared with other witnesses how he was going to testify in accordance with incriminating statements he obtained from the transcripts of the first *Martin* trial in violation of Federal Rule of Evidence 615. Hall argues that this permitted witnesses to corroborate their testimony against her.

The government disagrees with all of Hall's arguments and asserts that her motion should be denied.

## II. Analysis

### A. Newly Discovered Evidence – Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Whether to grant a Rule 33 motion is left to the sound discretion of the district court, *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008), and the defendant bears the burden of proving that a new trial should be granted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). Hall has based her motion on grounds of newly discovered evidence, pursuant to Rule 33(b)(1). *See* Fed. R. Crim. P. 33(b)(1). To obtain a new trial on this ground, a defendant must show that: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely

4

produce an acquittal. *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986); *see United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.), *cert. denied*, 461 U.S. 945 (1983).

Hall maintains that the submitted evidence regarding Lamar's conduct is newly discovered and could not have been discovered with due diligence. She asserts that she could not have discovered Lamar's testimony and conduct until after her trial and upon her review of the Kelso transcript, which Hall asserts was filed over a year after her own trial. Hall also asserts that the information in the Martin Affidavit about Lamar's conduct is newly discovered because she was not able to communicate with Martin and thus, could not have discovered the information before her trial. Hall argues that the information regarding Lamar's conduct is material and, because his testimony was the "only" evidence linking Hall to the drug conspiracy, would likely produce an acquittal. The government disagrees and argues that the Kelso transcripts do not contain newly discovered information and that the Martin Affidavit does not support Hall's argument that a new trial is warranted.

As to the Kelso transcripts which purport to reveal to Hall the existence of the letter from Lamar, the Court disagrees that this constitutes newly discovered evidence. As pointed out by the government, during the trial of Hall and Brooks, AUSA Plowell questioned Lamar regarding his interactions and cooperation with the government. Then, on cross-examination, Brooks' attorney, Mr. Roland Cowden, questioned Lamar on the contents of the letter he sent to AUSA Plowell [Doc. 585, p. 69, pp. 94-95]. Mr. Cowden quoted the letter and asked Lamar whether he was the author and what was his purpose in writing it [*Id.*, pp. 95-96]. Lamar responded affirmatively that he wrote the letter and that his purpose was to be truthful

5

[*Id.*]. Hall's counsel at trial, Mr. Vogel, was also present for this exchange. Given this line of questioning, the Court finds that Hall or her attorney knew of the letter from Lamar to AUSA Plowell, that Lamar was questioned by Mr. Cowden regarding the letter, and that Mr. Cowden challenged Lamar's truthfulness and credibility in relation to that letter. Accordingly, the Court does not find that the letter constitutes newly discovered evidence.

As to the Martin Affidavit, the Court will assume that this affidavit is newly discovered because Hall was unable to communicate with Martin. However, even assuming this first requirement of Rule 33(b), the Court finds that Hall has still not met her burden as to the remaining requirements. Hall has only averred, and has not shown, that the testimony discussed by Lamar with the other witnesses reaches the level of materiality required for a Rule 33(b) motion or that this information is not merely cumulative or impeaching and likely to produce an acquittal instead of a conviction. *See O'Dell*, 805 F.2d at 640. Moreover, beyond referring to testimony regarding the dates Hall traveled to Atlanta [*see* Doc. 649, p. 10], the Martin Affidavit neither identifies the specific testimony that was corroborated, nor reveals which witnesses gave it.

At trial, the government's evidence against Hall included recorded telephone conversations which presented the jury with evidence that Hall discussed her conduct in the drug conspiracy with other co-conspirators—conduct that included depositing money and picking up drugs. The jury was also able to consider drug ledgers containing drug-related notations in Hall's own handwriting. In addition, the jury was presented with large amounts of cash, firearms, and illegal drugs obtained from search warrants on various drug houses

linked to Hall and the conspiracy. The testimony Hall now claims was discussed and coordinated was corroborated by this other evidence implicating Hall in the charges against her—not merely Lamar's testimony. While Hall has averred that the evidence provided in the Martin Affidavit is material and would likely produce an acquittal, she has submitted little evidence, documentation, or argument to that effect. As such, given the evidence produced at trial, the Court finds that Hall has not shown that the information in the Martin Affidavit is material or likely to produce an acquittal.

### B. Federal Rule of Evidence 615

Rule 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear testimony of other witnesses[.]" Fed. R. Evid. 615. The U.S. Court of Appeals for the Sixth Circuit has stated that this rule is for the purpose of preventing "the influencing of a witness' testimony by another witness." *United States v. Rugiero*, 20 F.3d 1387, 1392 (6th Cir. 1994) (citing *United States v. Gibson*, 675 F.2d 825, 835 (6th Cir.), *cert. denied*, 459 U.S. 972 (1982)). Although it is unsettled that Rule 615 extends beyond the courtroom, assuming it does, it is well settled in the Sixth Circuit that a "violation of an order directing that witnesses be sequestered does not automatically bar a witness' testimony.'" *Rugiero*, 20 F.3d at 1394 (quoting *Gibson*, 675 F.2d at 835-36). The Sixth Circuit has stated that exclusion of testimony as a result of a violation should only be in "particular circumstances," such as "where a witness has remained in court with the 'consent, connivance, procurement, or knowledge' of the party seeking his testimony."

*United States v. Solario*, 337 F.3d 580, 593 (6th Cir. 2003) (quoting *Gibson*, 675 F.2d at 836).

Hall acknowledges that she argued in one of her prior motions that Rule 615 was violated during her trial [Doc. 650, p. 5]. In rejecting that previous argument, the Court found that Hall was not entitled to a new trial, even assuming a Rule 615 violation, because she had not presented sufficient evidence of prejudice or evidence that her trial was unfair [Doc. 616, pp. 28-29]. Hall asserts, however, that her Rule 615 argument warrants repeating because the cumulative effect of Lamar's violation was Hall's conviction. The government disagrees and asserts that even if the Court found a violation of Rule 615, Hall has not shown any prejudicial effect on the outcome of her trial.

Upon review of the parties' arguments, the Court will once again reject this argument. Beyond the Martin Affidavit, Hall has provided no other support for her argument that Lamar spoke to other witnesses about his testimony or that other witnesses corroborated their testimony as a result of conversations with Lamar. Hall has also not submitted any other evidence, beyond the Martin Affidavit, that the government knew or meant for its witnesses to be held together during trial, or that the government intended, procured, or was aware of any discussions between witnesses regarding their testimony.

Moreover, even assuming that a violation of Rule 615 occurred, Hall has not proved that a new trial should be granted as a result of that violation. As the Sixth Circuit has recognized, while violations of Rule 615 should be avoided, a violation of the sequestration rule must also prejudice the defendant and prevent him or her from receiving a fair trial. *See*

*Rugiero*, 20 F.3d at 1394. Here, the Martin Affidavit does not describe, beyond one example [Doc. 649, p. 10], what specific testimony was discussed and by which witnesses. Given the lack of specific evidence and the substantial amount of other evidence produced at trial by which a jury could have found against Hall, and based upon the undersigned's recollection of this trial and consideration of the parties' arguments, the Court finds that Hall has not met her burden of proving prejudice due to a Rule 615 violation.

### C. *Brady* Violation

A defendant may also frame a request for a new trial under *Brady*. *See United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005). To establish a violation of *Brady*, a defendant has the burden of showing that "the Government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). "Material" evidence means "that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome would have been different," and a "reasonable probability" means "a probability sufficient to undermine confidence in the verdict." *Jones*, 399 F.3d at 648 (internal quotations and citation omitted). As the U.S. Supreme Court has stated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the suppressed evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Strickler v. Greene*, 527 U.S. 263, 289-90 (1999) (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Accordingly, a defendant must prove a *Brady* violation "by showing that the favorable evidence could reasonably be taken to put the whole

9

case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. In *Giglio v. United States*, the Supreme Court held that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the *Brady* rule]." 405 U.S. 150, 154 (1972) (citation omitted). In *United States v. Bagley*, the Court held that for purposes of the *Brady* rule, there is no difference between exculpatory evidence and impeachment evidence. 473 U.S. 667, 676-78 (1985).

Hall asserts that the government's failure to disclose the letter Lamar sent to AUSA Plowell violates *Brady* because the government suppressed it and it was favorable to Hall. Hall also contends that the letter is material because it directly impacts Lamar's credibility and his testimony, which Hall asserts was the "only" evidence linking Hall to the conspiracy. Without the letter from Lamar, Hall asserts that the jury could not have heard evidence that Lamar tailored his testimony to address his concerns that he had been a disappointing witness for the government at the first *Martin* trial. The government disagrees, asserting that no *Brady* violation was committed and points again to the fact that Mr. Cowden questioned Lamar at trial regarding the letter while Hall and her attorney were present.

Given the questioning of Lamar at trial regarding the letter, the Court concludes that Hall knew of the letter at the time of trial. Furthermore, counsel at trial had the opportunity to cross-examine Lamar on the contents of the letter and to argue to the jury that the letter adversely impacted his credibility and showed him to be untruthful. Finally, Mr. Cowden was able to use the contents of the letter in an attempt to discredit Lamar's testimony.

Accordingly, the Court concludes that the government did not commit a *Brady* violation regarding non-disclosure of the letter because the contents were known to Hall at the time of trial and used by defense counsel in an attempt to discredit Lamar's testimony.

**III.    Conclusion**

In sum, finding that none of Hall's arguments warrants a new trial, Hall's third motion for new trial [Doc. 649] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
