# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v | ) | Case No. 3:07-cr-51-006 |
| | ) | |
| | ) | JUDGE VARLAN |
| LASHONDA HALL | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENT TO PRO SE MOTION FOR COMPASSIONATE RELEASE**

Comes Federal Defender Services (FDSET), by and through counsel, who supplements the *Pro Se* filing of Ms. Hall as follows:

**INTRODUCTION**

LaShonda Hall has filed a *Pro Se* motion for compassionate relief in this case and has provided the Court with legal support and her efforts to rehabilitate herself in prison. Her main argument is that the Court should consider the fact that she was sentenced under the old 924(c) "stacking law" on July 8, 2011 such that she was sentenced to 25 years consecutive for a second 924(c) conviction within the same case. In light of the First Step Act's amendments to the compassionate release statute which authorizes the modification of a term of imprisonment if "extraordinary and compelling reasons warrant such reduction," this Court can now consider her sentence which is a sentence she could not receive if she were

sentenced after the passage of the First Step Act. This supplement focuses on that issue. Ms. Hall's *Pro Se* filing certainly provides other matters for the Court to consider including her efforts at rehabilitation.

## I.      The First Step Act's Expansion of Compassionate Release Applications

"Prior to 2018 . . . only the director of the Bureau of Prisons could move for compassionate release. The First Step Act changed that." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (citing First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239). It amended 18 U.S.C. section 3582(c)—commonly referred to as "compassionate release"—to allow an inmate himself to petition a court for immediate release. *Id.* at 834-35. "No one contests that Congress made this change to increase access to compassionate release." *Id.* at 835.

Section 3582(c) allows a reduction in sentence where, among other requirements and possibilities, a district court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The statute does not define "extraordinary and compelling reasons," but does instruct "that such a reduction [be] consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Those policy statements appear in section 1B1.13 of the United States Sentencing Guidelines.

The application notes to section 1B1.13 allow for four circumstances of "extraordinary and compelling reasons" for release, including one expansive "catchall" provision. The first three conditions address an inmate's health, age, and the death or incapacitation of members of their family. USSG §1B1.13, comment. (n.1). The fourth, catchall provision reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* It is the only one of the four enumerated circumstances that mentions the Director of the Bureau of Prisons (the "BOP").

II. **The Court's Ability to Determine What Constitute "Extraordinary and Compelling Reasons" for a Reduction in Sentence**

This Court should join with the majority of other District Courts to consider the issue and conclude that it is empowered to make its own determination of what circumstances are "extraordinary and compelling reasons" to reduce a person's sentence. The preface to the catchall provision suggesting only the BOP can dictate those reasons is inconsistent with existing statutory law and a vestige of the pre-First Step Act era, an era Congress sought to end precisely because too few deserving inmates were obtaining relief.

The application note in question has not been updated to reflect the First Step Act changes from 2018, or indeed in 13 years. *Compare* §1B1.13, comment. (n.1) (2006 ed.), *with* §1B1.13, comment. (n.1) (2007 ed.). Nor could the Sentencing Commission have updated the application note to bring it into line with the First Step Act, since it has lacked a quorum since that law's passing. *United States v. Duncan*, No. 3:11-cr-12, 2020 WL 4669944, at *3 (M.D. Tenn. Aug. 12, 2020) (citations omitted). The reference to the BOP director in the preface to note 1(d), then, is a "redundancy," as a compassionate release motion could have come only from the BOP at the time the note was written. *Id.* (citation omitted).

Because the commentary now conflicts with section 3582, as it was changed by the First Step Act, that commentary does not bind the Court. The guidelines "commentary has no independent legal force." *United States v. Havis*, 926 F.3d 382, 386 (6th Cir. 2019) (en banc) (citing *Stinson v. United States*, 508 U.S. 36, 44-46 (1993)). It is only "authoritative unless it violates the Constitution or a federal statute." *Stinson* at 38. Section 1B1.13's commentary still refers to the BOP director as the sole gatekeeper of compassionate release determinations, both in the prefatory clause of the catchall provision and also in note four, which states that a reduction in sentence "may be granted only upon motion of the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)."

These outdated suggestions that the role of bringing and deciding reasons for motions for compassionate release resides only with the BOP render the application note inconsistent with the First Step Act's changes. "[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, No. 2:00-cr-2-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020) (Trauger, J.); *see also United States v. Avery*, No. 2:07-CR-20040-2, 2020 WL 3167579, at *6 (W.D. Tenn. June 9, 2020) ("Language in the Policy Statement and its Application Notes [including the preface to note 1(d)] conflicts with Congress's amendment of § 3582(c)(1)(A)."); *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *14 (E.D. Pa. July 6, 2020) ("The plain language of section 3582(c)(1)(A)(i) . . . contradicts the introductory phrase of Note 1(D) to the Commission's policy statement.") "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *Young* at *6 (citing *Stinson*); *see also Adeyemi* at *13-14 (citing *Stinson* and *United States v. LaBonte*, 520 U.S. 751 (1997), to conclude that the prefatory clause to note 1(d) is not binding).

5

Leaving the BOP as the sole gatekeeper of determining reasons for compassionate release would also contravene the entire purpose of the First Step Act's changes, which was to expand access to that avenue of relief. Prior to those amendments, "[t]he Bureau of Prisons . . . rarely filed such motions." *Adeyemi* at *9 (citation omitted). Through 2013 the BOP filed on behalf of only 24 inmates, on average, each year. *Duncan* at *4. "[T]hat number only increased to 83 inmates in 2014 after complaints were made . . . to the Bureau of Prisons by the Inspector General's office." *Id.*

Despite this increase Congress saw it necessary to expand access. The First Step Act listed its changes to section 3582 "under the title of 'Increasing the Use and Transparency of Compassionate Release." *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (citation omitted). If it were to be "assume[d that] the BOP Director faithfully executes the narrowly drawn policy and program statements related to compassionate release . . . . the only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may constitute 'extraordinary and compelling'" reasons for a reduction in sentence. *Id.* If the BOP's ability to consider any reason it saw as "extraordinary and compelling" was still resulting in an insufficient number

6

of compassionate release motions, in Congress's view, extending the ability to make that same determination to district courts was the solution.

Most of the district courts confronted with the mismatch between the guidelines commentary and the First Step Act's amendments have concluded that the outdated application note must give way to the statute. In the Middle District of Tennessee, Chief Judge Crenshaw recently joined his colleague Judge Trauger in so concluding. *See Duncan*, 2020 WL 4669944; *Young*, 2020 WL 1047815. Numerous other courts have reached the same outcome, a majority of those considering the issue. *See, e.g.*, *Adeyemi* at *11 ("A vast majority of judges considering whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences have concluded they can."); *United States v. Haynes*, No. 93-cr-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting thirteen cases reaching same conclusion); *Young* at *6 ("majority"); *United States v. Rodriguez*, No. 2:03-cr-271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) ("majority"). Mr. Wooden asks the Court to join them in concluding that it may decide for itself what constitute extraordinary and compelling reasons to reduce his sentence.

On September 25, 2020, in the first decision by a Court of Appeals addressing this issue, the Second Circuit ruled that contrary to the government's arguments, district courts have broad discretion "to consider the full slate of extraordinary and

7

compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Zullo*, No. 19-3218-cr, 2020 WL 5739712 at *7 (2d Cir. 2020). The Court reasoned that because the policy statement from the Guidelines states that "'[a] reduction *under this policy statement* may be granted only upon motion of the Director of the Bureau of Prisons' . . . this language must be read not as a description of the former statute's requirements, but as defining the motions to which the policy statement applies." *Id.* at *6 (emphasis added) (quoting U.S.S.G. § 1B1.13, cmt. n.4). Thus, that policy statement is not "applicable" to motions brought by imprisoned people themselves within the meaning of section 3582 and therefore does not bind district courts considering such motions. *Id.* The Court found that this reading "saves as much of the existing Guideline as is possible" while "also align[ing] with Congress' intent in passing th[e First Step] Act." *Id.* at *7.

### III. The Sentence in Ms. Hall's Case Would Not Occur After the Passage of the First Step Act.

Ms. Hall was a defendant in a drug conspiracy case that went to trial. She had no adult convictions at the time of her sentencing hearing and was in Criminal History category I. However, she was convicted of two counts of aiding and abetting by another the possession of a firearm in furtherance of a drug trafficking crime. She received five years consecutive to other counts for the first such conviction and

8

twenty-five years consecutive for the second count. Three hundred (300) months of her current 511 month sentence is attributable to the second 924(c) conviction. She has been in federal custody for approximately 151 months.

The "stacking" of 924(c) convictions was an injustice that Congress aimed to address with the First Step Act. The Act amended section 924(c) by replacing the phrase triggering enhanced penalties, "second or subsequent conviction under this subsection," with "violation of this subsection that occurs after a prior conviction under this subsection has become final." First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403. This meant that a person would be punished more harshly for a second violation of section 924(c) only if they had been previously adjudicated and punished for the first violation and were still not dissuaded from committing the same crime in the future. This change was not made retroactive.

The stacking of 924(c) convictions prior to the First Step Act was widely criticized as producing harsh and unfair results. Although the Supreme Court interpreted section 924(c) as permitting stacking in *United States v. Deal*, 508 U.S. 129 (1993), the operation of the penalty "was criticized as unjust and inconsistent with Congress's intent in drafting the relevant provision." *Avery*, 2020 WL 3167579, at *3 (citations omitted). Judges recognized that instead of reserving the harshest punishment only for "true recidivist[s] . . . those who have been sent to prison and

9

failed to learn their lesson," it could treat "first-time offenders" who had not previously been adjudicated for a 924(c) conviction more harshly than murderers and rapists. *United States v. Angelos*, 345 F. Supp. 2d 1227, 1231, 1245 (D. Utah 2004). Federal prosecutors recognized the harshness too, such as when Sally Yates, then U.S. Attorney for the Northern District of Georgia and testifying before the Sentencing Commission, noted "that the 'criticisms and concerns about the stacking of 924(c)s' were 'well known,' 'particularly in a scenario where you have an individual who is charged with multiple 924(c) counts in the same indictment.'" *Young*, 2020 WL 1047815, at *7 (citation omitted).

Based on the acknowledged harshness of 924(c) stacking, many courts have granted compassionate release to people sentenced under that now-defunct scheme. Some have focused exclusively on the First Step Act's changes to 924(c) sentencing. *See United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [Urkevich's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.") Others have noted it in combination with other factors, such as medical conditions that put the inmate at risk of serious illness if they contract COVID-19. *See, e.g.*, *Adeyemi*, 2020 WL 3642478 (granting compassionate release based on 924(c)

stacking and defendant's COVID-19 risk, among other factors); *Brown*, No. 4:05-CR-227-1, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020) (same); *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596 (W.D. Wash. Apr. 29, 2020) (same).

Courts granting compassionate release to defendants sentenced harshly due to 924(c) stacking have done so even though the First Step Act's changes to 924(c) sentencing were not made retroactive. As one court put it, "It is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under §924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." *United States v. Maumau*, No. 2:08-cr-758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020); *see also McPherson*, 2020 WL 1862596, at *5 ("Section 3582(c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause.").

Some additional courts to grant relief from the stacking provisions of the former 924(c) penalty statute were *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475 (D. Kan. Feb. 21, 2020), *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020), *United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 (S.D. Cal. Mar. 20, 2020), *United States v. Decatur*,

11

No. CCB-95-0207, 2020 WL 1676219 (D. Md. Apr. 6, 2020), *United States v. Defendants*, No. 2:99-CR-000257-CAS-3, 2020 WL 1864906 (C.D.Cal. Apr. 13, 2020), *United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911 (W.D. N.Y. Apr. 20, 2020), *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020), *United States v. Bryant*, No. CR95-202-CCB-3, 2020 WL 2085471 (D.Md. Apr. 30, 2020), *United States v. Avey*, No. 5:05-CR-00029, 2020 WL 2464796 (W.D. Va. May 13, 2020) and *United States v. Littrell*, No. 4:05-cr-00084-CDP, ECF 114 (E.D. Mo. May 19, 2020).

Ms. Hall obtained a GED while at the Bureau of Prisons. She has completed the nonresidential drug treatment program as well as the drug education class. Her class work and other achievements at the BOP are quite impressive. (See Doc. 877, pgs. 5-14.) She has also maintained jobs and has good reviews for her work.

**WHEREFORE, PREMISES CONSIDERED** Counsel requests that the Court grant the relief requested by Ms. Hall and otherwise to modify her sentence pursuant to the First Step Act/Amended Compassionate Release statute.

Respectfully submitted

FEDERAL DEFENDER SERVICES
 OF EASTERN TENNESSEE, INC.

By *s/Jonathan A. Moffatt*
Jonathan A. Moffatt
BOPR No. 18137
Assistant Federal Defender
800 S. Gay St, Suite 2400
Knoxville, Tennessee 37929
(865) 637-7979