IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v | ) | Case No. 3:07-cr-51-06 |
| | ) | JUDGE VARLAN |
| LASHONDA HALL | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENT IN SUPPORT OF COMPASSIONATE RELEASE**

LaShonda Hall, through undersigned counsel and in accordance with Local Rule 7.1(d), hereby supplements her request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) to inform the Court of legal developments occurring after the filing of her reply. The Tenth Circuit subsequently joined the Fourth in holding that those sentenced before the First Step Act could benefit from compassionate release even though the Act's changes to the drug enhancements were not made retroactive. *United States v. McGee*, ---F.3d---, 2021 WL 1168980, *9 (10th Cir. Mar. 29, 2021). At the same time, in *United States v. Wills* the Sixth Circuit issued a narrow holding, providing that it is not an abuse of discretion to deny compassionate release when the request is based on a change in the law that has not been made retroactive. *United States v. Wills*, 991 F.3d 720, 723-24 (6th Cir. 2021) (Case No. 20-6142). For several reasons *Wills* does not control the outcome here.

Wills, who was proceeding *pro se* at the time, argued that he should be considered for compassionate release due to the First Step Act of 2018, which among other things changed the requirements under 21 U.S.C. § 841 and § 851 for enhancing a mandatory minimum sentence based on a prior felony drug conviction. Pub. L. 115-

1

391, 132 Stat. 5222, § 401. Mr. Wills argued that after the First Step Act, he would no longer have a qualifying drug conviction that could trigger the § 851 enhancement; and that if sentenced today he would have only a 15-year mandatory minimum. *United States v. Wills*, No. 20-6142, Pro Se Brief, App. R. 5 at 1-2 (6th Cir. Oct. 21, 2020). On appeal, and unlike Ms. Hall, he did not assert any additional grounds supporting a reduction, such as any rehabilitation efforts or his good conduct while serving his sentence. *See generally id*. Thus, the *Wills* opinion addressed only a claim that a non-retroactive change in the law *standing alone* qualified as extraordinary and compelling, and it should not be read to address cases such as Ms. Hall's, where she argues that the change in law *in combination with* other factors supports a finding of extraordinary and compelling reasons for release.

When evaluating the Sixth Circuit's position on whether a defendant can rely on the First Step Act's change to § 851 enhancements, the Tenth Circuit characterized the Sixth's conclusion in *Tomes* (which uses wording similar to *Wills*) as "the fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, *standing alone*, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)." *McGee*, ---F.3d---, 2021 WL 1168980, *10 (emphasis added) (discussing *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021). "Instead, we [in agreement with *Tomes*] conclude that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i)." *Id*. *Wills's* holding is similarly limited to the conclusion that district courts *can* exercise their discretion to deny release when the request is based only on a non-retroactive change in the law. But *Wills* does not say the inverse—that it is *necessarily* an abuse of discretion to rely on a change in the law.

2

In other words, *Wills* does not compel the conclusion that a non-retroactive change in the law will never support a finding of extraordinary and compelling reasons for release, especially when that change is considered along with additional, individualized factors. Overreading *Wills* as holding more would unduly raise concerns under the doctrine that issues which the court is silent on do not constitute binding authority. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 n.4 (1989) ("[T]his Court has never considered itself bound [by prior *sub silentio* holdings] when a subsequent case finally brings the jurisdictional issue before us." (quotation marks omitted) (second alteration in original)); *accord Staley v. Jones*, 239 F.3d 769, 776 (6th Cir. 2001); *see also Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (rather, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents" (quotation marks omitted) (alteration in original)).

Reading *Wills* to broadly also runs directly into conflict with every other circuit to have decided the issue. To be sure, the court in *Wills* included some very broad statements, not necessary to the outcome, and which were pulled directly from the government's brief. (*United States v. Wills*, No. 20-6142, Gov't Brief, App. R. 8 (6th Cir. Nov. 19, 2020); *United States v. McMurry*, 653 F.3d 367, 375 (6th Cir 2011) (overruled on other grounds by *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017)) (a statement not necessary to the outcome of a case is non-binding dicta); *Kada v. Barr*, 946 F.3d 960, 965 n.1 (6th Cir. 2020) (a standard pronounced in a case that is not necessary to the outcome is non-binding dicta). The court stated that "the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced," and "[w]hat the Supreme Court views

3

as the 'ordinary practice' cannot also be an 'extraordinary and compelling reason' to deviate from that practice." *Wills*, 991 F.3d at 723-24. But the panel was apparently unaware that such assertions—if deemed to prevent consideration of a change of law *in combination with* other factors—would create a circuit split. We must remember that Wills was proceeding *pro se* at the time. So, while noting that "other courts" ruled in his favor, he failed to cite a single case. *Wills*, 991 F.3d at 724; *Wills*, No. 20-6142, Pro Se Brief, App. R. 5. Nor did the government bring to the attention of the Sixth Circuit the fact that every circuit to decide the issue had agreed that a change in the law—even when not explicitly made retroactive by Congress—can be a basis for compassionate release either standing alone or in combination with other factors. *United States v. Wills*, No. 20-6142, Gov't Brief, App. R. 8 (6th Cir. Nov. 19, 2020).

Indeed, in *United States v. McCoy,* decided prior to *Wills* but not cited by either party, the Fourth Circuit flatly rejected the government's proposition "that by taking into account the [non-retroactive] First Step Act's elimination of § 924(c) sentence-stacking, the district courts impermissibly gave that provision retroactive effect, contrary to Congress's direction." 981 F.3d 271, 286 (4th Cir. 2020). The court explained "[t]he fact that Congress chose not to make § 403 *categorically* retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *Id*. (emphasis added). This conclusion was required because "the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id*. at 287.

In *McGee*, decided shortly after *Wills*, the Tenth Circuit followed suit, rejecting the

4

same government argument raised in *Wills*. 2021 WL 1168980, *9 (explaining that "nothing in § 401(c) or any other part of the First Step Act indicates that Congress intended to prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to *some* of those defendants [whose mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) predated the First Step Act]"). The Tenth Circuit explained that "a district court finding the existence of 'extraordinary and compelling reasons' based, in part, on a defendant's pre-First Step Act mandatory life sentence under § 841(b)(1)(A) does not, in our view, necessarily usurp Congressional power." *Id*.

And, in *United States v. Brooker*, (also decided before *Wills* and mentioned in the government's brief only for the proposition that granting a compassionate release reduction "is best left to the sound discretion of the trial court in the first instance," (*Wills*, Gov't Br., App. R. 8 at 12)), the Second Circuit emphasized that "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" 976 F.3d at 230, 237-38 (quoting 28 U.S.C. § 994(t)). Thus, it held that a district court would not necessarily abuse its discretion by reducing a defendant's otherwise-mandatory minimum sentence due to the length of the sentence and the individual's rehabilitation efforts. *Id*. at 237-38.

These circuits stand united in their correct view of Congressional intent. Indeed, such a conclusion is compelled by the explicit language of § 3582(c)(1)(A)(i) itself, which states that, "[t]he court may not modify a term of imprisonment once it has been imposed except that—(1) *in any case* . . . the court . . . may reduce the term of imprisonment . . . . if it finds that—(i) extraordinary and compelling reasons warrant such

5

a reduction. . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added); *United States v. Kibble*, No. 20-7009, 2021 WL 1216543, at *6 (4th Cir. Apr. 1, 2021) (Gregory, C.J., concurring) (citing *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'")). "When a statute provides for relief in 'any case,' there is no basis for categorically limiting that relief to a certain subset of cases." *Kibble*, 2021 WL 1216543, at *6 (citing *Gonzales*, 520 U.S. at 5); accord *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 220 (2008) (finding that Congress' use of the word "any" was most naturally understood as meaning "of whatever kind"); *Citizens' Bank of La. v. Parker*, 192 U.S. 73, 81 (1904) ("The word any excludes selection or distinction.").

Chief Judge Gregory continued, noting that "[t]he Supreme Court reminds us that courts must give effect to each word in a statute." *Id*. (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A*., 530 U.S. 1, 6 (2000) ("Congress says in a statute what it means and means in a statute what it says there."); *Setser v. United States*, 566 U.S. 231, 239 (2012)). He explained that he was emphasizing "the breadth of 18 U.S.C. § 3582(c)(1)'s text . . . to give effect to the policy choice that Congress made plain: when extraordinary and compelling circumstances exist, even the most serious offenders may be eligible for mercy." *Id*. The same holds true for Ms. Hall and her stacked § 924(c) sentence—when Congress said the Court can reduce *any* sentence, it meant just that.

Importantly, reading *Wills* as categorically prohibiting reliance on a change in the law imputes to the Sixth Circuit an intent to issue a ruling directly opposed to every other circuit to have addressed the issue, but without acknowledging those other circuits or the split it was creating. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir.

6

2010) ("As a general matter, we do not create conflicts among the circuits without strong cause. We adhere to this view because federal law (unlike state law) is supposed to be unitary" and "thus [we] temper the independence of the analysis in which we engage by according great weight to the decisions of other circuits on the same question." (quotation omitted)). The Sixth Circuit does not lightly contradict the holdings of its sister circuits, and certainly not when it stands alone in its position. *Id*. (noting the court "assign[s] great weight to the unanimity of thought that precedes our own determination of this issue," and declining to create a circuit split where every other circuit to have addressed the issue reached the same conclusion); *Nixson v. Kent County*, 76 F.3d 1381, 1388 (6th Cir. 1996) (explaining the court "do[es] not take lightly disagreement with the views of our sister circuits," and that it is "not constrained to follow them *if*, in our opinion, they are based upon an incomplete or incorrect analysis" and rejecting the conclusion of another circuit only after thorough review (emphasis added)). Given the Sixth Circuit's reluctance to create a circuit split without thorough discussion, it appears that either the *Wills* panel was not aware of the holdings of the other circuits, or that it viewed its conclusion as aligned with those circuits.

The united position of the other circuits is the correct view and flows logically from the fact that Congress envisioned courts considering whether a specific sentence was unduly long (regardless of whether an independent statute authorized collateral review) when it passed the original compassionate release statute in 1984. *Brooker*, 976 F.3d at 238 (citing S. Rep. No. 98-225, at 55-56 (1984)). The Senate Report that originally accompanied the act in 1984 explained why it was abolishing federal parole, but simultaneously despite abolishing parole it explained that "there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified

7

by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of *an unusually long sentence*, and some cases in which the sentencing guidelines for the offense . . . have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56 (1984) (emphasis added); *see also Brooker*, 976 F.3d at 238; *McCoy*, 981 F.3d at 286 n.8. The very nature of compassionate release—indeed the whole point—is to provide individuals deserving of a renewed look at their sentence a vehicle to seek relief even though no other path to relief exists. If compassionate relief was only available to individuals who can benefit from a separate collateral attack statute, it would be redundant and serve no purpose.

As one district court explained, "[d]espite this [original Congressional] intent, a 2013 Inspector General's report by the Department of Justice found that 'although the BOP's regulations and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single nonmedical request during the 6-year period of our review.'" *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, *6 (D. Utah Feb. 18, 2020) (citing U.S. DEP'T OF JUSTICE, *The Federal Bureau of Prisons' Compassionate Release Program*, at ii, (Apr. 2013).1). "In other words, Congress indicated thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are 'unusually long' but the Bureau of Prisons consistently declined to seek relief in those situations." *Maumau*, 2020 WL 806121, at *6; *see also Brooker*, 976 F.3d at 238 (citing *Maumau's* reasoning with approval).

---

[1] Available at https://oig.justice.gov/reports/2013/e1306.pdf (last visited Apr. 15, 2021).

Because of that failure, "Congress responded by eliminating the Bureau of Prisons' gatekeeping function over compassionate releases. Accordingly, the fact that the phrase 'extraordinary and compelling reason' has not historically been interpreted to include exceedingly long sentences is an unpersuasive reason to exclude such an interpretation today." *Id.* As the Second Circuit explained, "Congress clearly did not view this—a break with over 30 years of procedure—as a minor or inconsequential change. Congresspersons called it 'expand[ing],' 'expedit[ing],' and 'improving' compassionate release." *Brooker*, 976 F.3d at 235 (citing 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin); 164 Cong. Rec. H10346, H10362 (Dec. 20, 2018) (statement of Rep. Jerrold Nadler)).

At bottom, Congress always contemplated that unduly long sentences could be reduced via compassionate release. It did not provide any indication in the compassionate release statute that unduly long sentences should be reduced *only if* there was also an independent, specific statutory basis for retroactive application of a change in law. To the contrary, it provided that *any* sentence can be reduced. 18 U.S.C. § 3582(c)(1). In light of the facts at issue in *Wills*, the conclusions of the other circuit courts that have directly addressed the question, and the legislative history surrounding the creation and expansion of compassionate release, *Wills* is best read as requiring that something more than just a change in the law is required—something evidencing that the *individual's* circumstances render his sentence unreasonable *today*.

Along these lines we must remember that the stacked 924(c) context is markedly different than the § 851 context because in most cases the § 924(c) stacking alone resulted in dramatic disparity not only with others sentenced on more serious crimes, but also when compared to an individual's equally or more culpable codefendants and

9

when compared to the mandatory minimum the individual would receive today. (*See* Supp., R. 237, PageID #316-321 (collecting cases)). Moreover, the Sixth Circuit itself has indicated that *Wills* cannot automatically be applied to the § 924(c) context, as it explained it would be appointing counsel to a defendant raising his stacked § 924(c) sentence as a basis for compassionate release due to the complexity of the issue, and despite the court's pronouncement that there is no right to counsel on appeal from a compassionate release loss. *United States v. Manso-Zamora*, 991 F.3d 694, 696 and n.4 (6th Cir. 2021) (Case No. 20-1665).

*Wills* simply does not dictate a dismissal here, where Ms. Hall's request for a compassionate release reduction is based not only on the change in law occasioned by the First Step Act's modification of § 924(c)'s "stacking" provision but also her excellent and unusual rehabilitation and conduct while serving her sentence. This combination of factors supports a finding of extraordinary and compelling reasons for a reduction in her sentence.

WHEREFORE, Ms. Hall continues to respectfully request that the Court grant her motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and either resentence her without a twenty-five year "stacked" sentence or schedule a hearing to determine the extent of the reduction under the § 3553(a) factors.

10

Case 3:07-cr-00051-TAV-HBG   Document 920   Filed 05/04/21   Page 10 of 11   PageID #: 8398

Respectfully submitted,

FEDERAL DEFENDER SERVICES
 OF EASTERN TENNESSEE, INC.

By: /s/ *Erin P. Rust*
Erin P. Rust MO Bar #63207
Jonathan Moffatt TN Bar #18137
Assistant Federal Defenders
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349