UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:07-CR-51-TAV-JEM-6 |
| LASHONDA HALL, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), or alternatively, a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(B) and the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) [Doc. 938]. The government has responded, deferring to the Court's discretion as to whether and to what extent to grant a sentence reduction [Doc. 939]. The matter is now ripe for the Court's consideration. For the reasons stated below, defendant's motion for compassionate release [Doc. 938] will be **GRANTED**.

**I. Background**

A jury convicted defendant of the following: conspiracy to distribute and possession with the intent to distribute 5 kilograms or more of cocaine, 50 kilograms or more of cocaine base ("crack"), a quantity of marijuana, and a quantity of ecstasy, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); possession with intent to distribute

marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Three); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (2) (Counts Two and Four); and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h), (a)(1)(A)(i), and (a)(1)(B)(i) (Count Fifteen) [Doc. 537].

At the time of sentencing, defendant was held responsible for at least 15 but less than 50 kilograms of cocaine, 50 grams of crack cocaine, and an equivalency of 8.77 kilograms of marijuana, for a combined marijuana equivalent of 3212.81 kilograms. [Presentence Investigation Report ("PSR") ¶¶ 76, 82]. Ultimately, defendant's total offense level was calculated as 36 [Doc. 723, p. 16 (sustaining some objections to the PSR)]. Given defendant's criminal history category of I, defendant's applicable guideline range for her drug and money laundering offenses was 188 to 235 months' imprisonment [*Id.*]. Defendant was also subject to consecutive mandatory minimums of 60 and 300 months' imprisonment, respectively, for her § 924(c) offenses [*Id.* at 16–17]. Thus, her combined guideline range was 548 to 595 months' imprisonment [*Id.*].

The Court sentenced defendant to 548 months' imprisonment, followed by five years' supervised release [Doc. 701]. Defendant later moved for a sentence reduction, pursuant to 18 U.S.C. § 3582(c)(2), in light of Amendments 782 and 788 to the United States Sentencing Guidelines [Docs. 770, 840]. The Court reduced her sentence to 511 months' imprisonment, followed by five years' supervised release [Doc. 859]. Defendant

is scheduled for release on July 4, 2044. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 5, 2021).

## II. Compassionate Release

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). Now, a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the facility in which the defendant is housed, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in

3

> [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). However, "[i]n cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. Thus, the Court has discretion to grant a compassionate release motion when the exhaustion requirement is met, extraordinary and compelling reasons warrant a sentence reduction, and the applicable § 3553(a) factors support the reduction. *See Jones*, 980 F.3d at 1107–08; *Elias*, 984 F.3d at 519. The Court considers each issue in turn.

### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *See United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

4

The United States concedes that defendant has exhausted her administrative remedies [Doc. 939, p. 3; Doc. 939-1]. Thus, the Court may consider the merits of defendant's request.

## B. Extraordinary and Compelling Reasons

The Court next addresses whether defendant has shown that extraordinary and compelling reasons warrant compassionate release. In this instance, the Court finds that defendant has established extraordinary and compelling reasons for compassionate release. In reaching this decision, the Court recognizes that it has discretion to determine what constitutes extraordinary and compelling reasons. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

Defendant asserts that "a unique constellation of facts" in her case "collectively creates extraordinary and compelling reasons for [her] release" [Doc. 938, p. 2]. Defendant points to "a number of deaths and illnesses that have eroded the primary caregivers in her family," "the lack of [a] primary caregiver for her son and niece," that she "suffers from neuropathy and obesity, which are serious health conditions that increase her risk for COVID-19 complications," and her efforts "for over a decade to demonstrate that she is not beyond redemption and rehabilitation," which has led a Bureau of Prisons Case Manager to describe her as a "Model Inmate" [*Id.* at 1–2, 25]. The United States responds

5

Case 3:07-cr-00051-TAV-JEM   Document 944   Filed 04/12/22   Page 5 of 15   PageID #: 8705

that "none of the proffered reasons are extraordinary and compelling within the meaning of § 3582(c)(1)(A)" [Doc. 939, p. 9].[1]

"Although the statute does not define extraordinary and compelling, those words still have their ordinary meaning at the time Congress enacted the statute" and "when Congress enacted the statute . . . , extraordinary was understood to mean most unusual, far from common, and having little or no precedent," while "[c]ompelling meant forcing, impelling, driving." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (citations and quotations omitted). While courts have "discretion to define extraordinary and compelling," some limitations exist. *Jones*, 980 F.3d at 1111. For instance, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine," standing alone "does not present an extraordinary and compelling reason warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Additionally, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

---

[1] The United States asserts that defendant lists "nonretroactive post-sentence legal developments" as support for finding extraordinary and compelling reasons in this case [Doc. 939, p. 8]. However, defendant does not cite these developments in the portion of defendant's motion seeking compassionate release; rather, defendant addresses these developments in the portion of her motion seeking a sentence reduction under § 3582(c)(1)(B) [Doc. 938, p. 10]. The United States, however, is correct that post-sentence legal developments, namely the First Step Act of 2018, would result in "statutorily mandated penalties totaling 20 years' imprisonment" if defendant were sentenced today rather than the "statutorily mandated penalties totaling 40 years' imprisonment" that applied when defendant was sentenced [*Id.* at 16].

"Viewed as a matter of equity, those are compelling facts." *United States v. Andrews*, No. 3:93-CR-31, 2021 WL 3085314, at *2 (E.D. Tenn. July 21, 2021), amended on reconsideration, No. 3:93-CR-31, 2021 WL 3374985 (E.D. Tenn. Aug. 3, 2021) (describing a similar sentencing disparity). The Court, however, is not considering post-sentence legal developments in determining whether extraordinary and compelling reasons exist in this case.

6

On the other hand, the application notes of policy statement § 1B1.13 provide examples of circumstances under which extraordinary and compelling reasons exist. *See* U.S.S.G. § 1B1.13. While the Court has discretion to define what constitutes extraordinary and compelling reasons without consulting § 1B1.13 because defendant, and not the Bureau of Prisons, filed the instant motion for compassionate release, *see Jones*, 980 F.3d at 1111, these examples remain "relevant, even if no longer binding." *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021), cert. denied, 142 S. Ct. 780 (2022) (noting that § 1B1.13 may provide "helpful guidance" but is not "the dispositive boundary of what may be judicially determined to be extraordinary and compelling reasons for a sentence reduction" (quotations omitted)).

Under § 1B1.13, extraordinary and compelling reasons exist when "[t]he defendant is suffering from a terminal illness" or "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13. Additionally, § 1B1.13 indicates that extraordinary and compelling reasons for release exist when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* Family circumstances also constitute such reasons under § 1B1.13, as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered

7

partner when the defendant would be the only available caregiver for the spouse or registered partner" each provide such reasons. *Id.* Finally, § 1B1.13 provides that the Director of the Bureau of Prisons may determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described." *Id.* Thus, these guidelines contemplate that the defendant's medical condition, family circumstances, and other circumstances, alone or in combination, may present extraordinary and compelling reasons supporting compassionate release.

Turning to the facts of this case, the Court finds that extraordinary and compelling reasons supports defendant's request for compassionate release. The unique combination of facts present in this case constituting such reasons include defendant's medical conditions, her heightened risk of complications from COVID-19, her family circumstances, and her notable post-sentencing rehabilitation.

Beginning with defendant's medical conditions, the Court notes that at defendant's correctional institution, there are currently zero inmates and staff positive for COVID-19, with 427 inmates and 62 staff having recovered, and two inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus (last accessed April 7, 2022). The Court notes that these numbers indicate a presently low risk of contracting COVID-19 in defendant's correctional institution. Moreover, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *Lemons*, 15 F.4th at 751. However, this Court finds that defendant's risk for developing serious

8

complications if she contracted COVID-19, in combination with the overall severity of her health issues, and the other factors discussed below, cumulatively establish extraordinary and compelling reasons for compassionate release.

The inmate requesting compassionate release in *Lemons* asserted that he suffered from hypothyroidism and therefore had a heightened risk of contracting COVID-19, but the inmate did not describe "what heightened risk he faces" and the district court noted that "hypothyroidism does not appear on the Centers for Disease Control's list of risk factors for COVID-19." *Id.* In contrast to the inmate in *Lemons*, defendant suffers from multiple conditions the Centers for Disease Control and Prevention ("CDC") recognizes as risk factors for COVID-19. For instance, defendant's height and weight results in a body mass index ("BMI") of 37.2 [Doc. 940, p. 83]. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last accessed April 7, 2022). According to the CDC, a BMI greater than 25 "can make you more likely to get very sick from COVID-19. The risk of severe illness from COVID-19 increases sharply with higher BMI." *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed April 7, 2022). Defendant is also a former smoker [Doc. 940, p. 132], which "can make you more likely to get very sick from COVID-19." *Id.* In addition to these conditions that the CDC recognizes as risk factors for COVID-19, defendant currently suffers from conditions including polycystic ovaries, idiopathic autonomic neuropathy, myopia, nerve pain, neuralgia neuritis, radiculitis, nerve

9

root and plexus disorder, carpal tunnel syndrome, disease of spinal cord, astigmatism, dental caries, osteoarthritis, and cervical disc disorder, among others [*Id.* at 93–94]. The Court concludes that defendant's medical conditions and her heightened risk of complications if she contracts COVID-19, combined with the factors discussed below, constitute extraordinary and compelling reasons for compassionate release.

Defendant's family circumstances also support finding extraordinary and compelling reasons in this case. Defendant asserts that her mother is "the sole caregiver for Ms. Hall's developmentally challenged son and young niece" because defendant's sister died on March 17, 2021, and her grandmother died on June 17, 2021 [Doc. 938, p. 2; Doc. 942, pp. 1–2, 8–9, 11–12]. Defendant's mother suffered an "acute lacunar stroke" in November 2021, and suffers from "chronic heart failure," which "is 'highly associated' with sudden cardiac death" [Doc. 942, pp. 1–6]. Defendant asserts that these deaths and illnesses "have eroded the primary caregivers in her family," her son and niece lack a primary caregiver, and she "seeks compassionate release to care for her ailing mother, her minor niece[,] and her developmentally challenged son" [Doc. 938, pp. 2, 9]. The Court finds that defendant has established that, in light of recent deaths and deteriorating health of family members, she is the only available caregiver for her niece and son, who has developmental difficulties, and presumptively necessitates extra caregiving. Accordingly, the Court finds that defendant's family circumstances, combined with the other factors discussed herein, constitute extraordinary and compelling reasons for compassionate release.

Finally, defendant's post-conviction rehabilitation also supports finding extraordinary and compelling reasons in this case. While "rehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t) (emphasis added), the Court finds that, in tandem with defendant's medical conditions and family circumstances, defendant's rehabilitative efforts constitute extraordinary and compelling reasons in this case. As the United States recognizes, "[defendant's rehabilitative efforts are commendable" [Doc. 939, p. 17]. According to a Bureau of Prisons Case Manager, defendant "has done an outstanding job programming and is what I would refer to as a 'Model Inmate'" [Doc. 938, p. 25]. Defendant served in the Suicide Watch Companion and Mentor Program, which involves "shar[ing] a cell with suicidal prisoners to ensure they do not harm themselves . . . [and] report[ing] self-harm occurrences to prison staff, for which she risks . . . retaliation" [*Id.* at 20]. Regarding defendant's participation in the program, the Chief Psychologist stated that "her voluntary service this past year has been invaluable" [*Id.* at 27]. Additionally, defendant "completed her GED and enrolled in college courses at Pierpont Community College, where she took classes for finance, resume writing, and business entrepreneurship" [*Id.* at 21].

Multiple individuals have submitted letters in support of defendant's motion, stating, for example: "[defendant] possesses the desire and determination to learn from her mistake and move in a positive direction with her life" [Doc. 905, p. 1], "[i]n the couple of years I've known [defendant], she has been nothing but a model inmate, a positive peer, and a role model for the women around her" [Doc. 913, p. 1], and "she is the definition of

11

the word 'growth'" [Doc. 902, p. 1]. Considering all of this information, the Court finds that defendant has performed admirably in her rehabilitative efforts, without the promise of imminent release, indicating a strong desire to be a contributing member of society. Combined with the factors discussed above, the Court finds that defendant's rehabilitative efforts are extraordinary and compelling.

Considering all of the unique circumstances present in this case together, including defendant's medical conditions, her family circumstances, and her post-conviction rehabilitation, the Court finds that extraordinary and compelling reasons support defendant's compassionate release. Because the exhaustion requirement has been met and extraordinary and compelling reasons support compassionate release in this case, the Court may grant defendant's motion if the applicable § 3553(a) factors support compassionate release. *See Jones*, 980 F.3d at 1107–08; *Elias*, 984 F.3d at 519.

### C. 18 U.S.C. § 3553(a) Factors

Finally, the Court addresses whether the applicable 18 U.S.C. § 3553(a) factors support compassionate release in this case. Defendant asserts that they do, pointing to her rehabilitative efforts, her history and characteristics, the disparity between the sentence imposed and the statutory mandatory minimum sentence for the same conduct today, and her release plan [Doc. 938, pp. 17–22]. The United States responds that "[a]ny sentence less than 480 months' imprisonment would be inconsistent with the totality of the § 3553(a) factors" [Doc. 939, p. 17 (emphasis omitted)].

12

Pursuant to 18 U.S.C. § 3553(a), the Court must consider the following factors and impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . .;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court notes that it previously considered the applicable § 3553(a) factors both at the initial sentencing and when reducing defendant's sentence to 511 months, at which point the Court determined that the factors supported a sentence reduction [Doc. 859,

pp. 6–7]. Considering these factors again in light of defendant's instant motion, the Court finds that these factors support compassionate release. The Court has considered the nature and circumstances of defendant's offenses and defendant's history and characteristics, including defendant's personal characteristics, criminal history, and post-sentencing conduct. The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. The Court has also considered the kinds of sentences available and the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims.

While the Court acknowledges that defendant's conduct in this case was serious, the Court finds that defendant's age, need to function as the primary caretaker for several family members, and extensive post-sentencing rehabilitation significantly lessen her likelihood of reoffending, and therefore, defendant is unlikely to present a risk to the public. Moreover, the Court notes that defendant has already served a significant period of incarceration, which the Court finds will provide sufficient deterrence, promote respect for the law, and provide just punishment. Finally, upon her release, defendant remains subject to a five-year term of supervised release, during which she will be subject to certain conditions and be supervised by the United States Probation Office. The Court finds that

14

this five-year term of supervised release will further protect the public, promote respect for the law, and assist defendant in her rehabilitative efforts.

Accordingly, having considered the relevant § 3553(a) factors and the record before it, the Court finds that these factors support defendant's compassionate release. Because defendant has satisfied the exhaustion requirement, extraordinary and compelling reasons exist, and the applicable § 3553(a) factors support compassionate release, the Court finds compassionate release to be appropriate. Therefore, defendant's motion [Doc. 938] is **GRANTED**.[2]

### III. Conclusion

For the reasons set forth above, defendant's motion [Doc. 938] is **GRANTED** and defendant's sentence is **REDUCED** to **TIME SERVED** followed by five (5) years' supervised release.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court is granting defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court need not consider defendant's alternative request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(B).